## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GRINNELL MUTUAL REINSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. |
| S.B.C. FLOOD WASTE SOLUTIONS, INC. f/k/a FLOOD WASTE SOLUTIONS, INC., FLOOD, INC., BRIAN J. FLOOD, SHAWN FLOOD, CHRISTOPHER FLOOD, KAREN S. COLEY, and FLOOD BROS DISPOSAL CO., | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR RESCISSION AND DECLARATORY JUDGMENT

Plaintiff, Grinnell Mutual Reinsurance Company ("Grinnell"), for its Complaint for Rescission and Declaratory Judgment against Defendants, S.B.C. Flood Waste Solutions, Inc. f/k/a Flood Waste Solutions, Inc. ("SBC Flood"), Flood, Inc., Brian J. Flood, Shawn Flood, Christopher Flood, Karen S. Coley, and Flood Bros Disposal Co. ("Flood Brothers"), states as follows:

## NATURE OF THE ACTION

1.      In Count I of this Complaint, Grinnell seeks the rescission of a primary-layer general liability insurance policy on the basis that it is void *ab initio* because SBC Flood, a recently-formed closely-held corporation, made material misrepresentations by not disclosing an ongoing business dispute and lawsuit brought against it and its principals by another competing waste and recycling business controlled by family members (the "Flood v. Flood Action").

2.      In Count II, Grinnell alternatively seeks a declaratory judgment that it is has cancelled the primary-layer general liability insurance policy.

1

3.      In Counts III through V, Grinnell alternatively seeks a declaratory judgment that it owes no duty to defend or indemnify the underlying defendants as to the Flood v. Flood Action were the primary-layer general liability insurance policy not void *ab initio*.

4.      In Count VI, Grinnell seeks a declaration that no valid contract exists between it and SBC Flood for umbrella liability insurance for failure of preconditions to a valid contract – acceptance of the offer to contract, a meeting of the minds, consideration, and reasonably certain terms.

5.      In Count VII, Grinnell alternatively seeks the rescission of any binder or contract for umbrella liability insurance on the basis that it is void *ab initio* due to application misrepresentations.

6.      In Count VIII, Grinnell alternatively seeks a declaratory judgment that it is has cancelled the binder for umbrella liability insurance.

7.      In Count IX, Grinnell alternatively seeks a declaratory judgment that it owes no duty to defend or indemnify the underlying defendants as to the Flood v. Flood Action under the binder for umbrella liability insurance.

8.      In Count X, Grinnell seeks the rescission of a commercial auto policy on the basis that it is void *ab initio* due to application misrepresentations, and because Grinnell would only have issued the commercial auto policy to SBC Flood if it also wrote (*i.e.*, validly issued) the primary-layer general liability coverage.

9.      In Count XI, Grinnell alternatively seeks a declaratory judgment that it is has cancelled the commercial auto policy.

302217531v1 1010661

## PARTIES

10.     Plaintiff, Grinnell, is an Iowa corporation engaged in the insurance business with a statutory home office and principal place of business at 4215 Highway 146 South, Grinnell, Iowa.

11.     On information and belief, Defendant, SBC Flood, is an Illinois corporation with its principal place of business located in DuPage County, Illinois.

12.     On information and belief, Defendant, Flood, Inc., is an Illinois corporation with its principal place of business located in DuPage County, Illinois.

13.     On information and belief, Defendant, Brian Flood, is a domiciliary and citizen of the state of Illinois.

14.     On information and belief, Defendant, Shawn Flood, is a domiciliary and citizen of the state of Illinois.

15.     On information and belief, Defendant, Christopher Flood, is a domiciliary and citizen of the state of Illinois.

16.     On information and belief, Defendant, Karen Coley, is a domiciliary and citizen of the state of Illinois.

17.     SBC Flood, Brian Flood, Shawn Flood, Christopher Flood, and Karen Coley are referred to herein as the "SBC Flood Defendants."

18.     On information and belief, Defendant, Flood Brothers, is an Illinois corporation with its principal place of business located in DuPage County, Illinois.

19.     Flood Brothers is the plaintiff in an underlying lawsuit against Flood, Inc., SBC Flood, Brian Flood, Shawn Flood, Christopher Flood, and Karen Coley.  Flood Brothers is named as a nominal defendant in this action because it is a party which may have an interest in the matters at issue, but no claims are asserted against it.

3

## JURISDICTION AND VENUE

20.     This Court has personal jurisdiction over the Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A) and 735 ILCS 5/2-209(a), 5/2-209(b), and/or 5/2-209(c).

21.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because, on information and belief, there is diversity of citizenship between the Plaintiff, Grinnell, and all the Defendants, and the amount in controversy exceeds $75,000, exclusive of interests and costs.  Further, the Flood v. Flood Action, which has been tendered to Grinnell for the payment of defense costs and indemnity, seeks (a) compensatory damages, (b) forfeiture of all compensation received by Brian Flood from Flood Brothers since 2014, (c) punitive damages, (d) injunctive relief, and (e) attorney's fees and costs.  The putative liability insurance contracts which, among other things, this Complaint seeks to rescind, purportedly are subject to limits of liability totalling several million dollars.

22.     This Court has subject matter jurisdiction over the several declaratory judgment counts of this Complaint pursuant to 28 U.S.C. § 2201(a). An actual, immediate, and justiciable controversy exists between the parties with respect to the putative liability insurance contracts, such that a declaratory judgment will affect the rights and interests of the parties.

23.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim took place in Cook County and DuPage County, Illinois, which are located in this district, and/or pursuant to 28 U.S.C. § 1391(b)(3) because, on information and belief, one or more of the Defendants is subject to personal jurisdiction in this district.

## THE UNDERLYING FLOOD v. FLOOD ACTION

24.     On May 10, 2018, Flood Brothers filed a Complaint for Injunctive Relief and Damages (the "Flood Complaint") against the SBC Flood Defendants and Flood, Inc. in the

302217531v1 1010661

_Flood v. Flood_ Action, _Flood Bros Disposal Co. v. S.B.C. Flood Waste Solutions, Inc., et al._, Case No. 2018 CH 000608, Circuit Court for the Eighteenth Judicial Circuit, DuPage County, Illinois. A true and correct copy of the Flood Complaint is attached hereto as **Exhibit 1**.

25. The _Flood v. Flood_ Action is a family business dispute. The various "Flood" business entities and family members who are parties to the _Flood v. Flood_ Action are alleged to be engaged in the waste and recycling business in the Chicago area.

26. The Underlying Plaintiff, Flood Brothers, allegedly is a family owned company which "traces its roots back to 1930" and currently is "the preeminent family owned waste and recycling business in Chicagoland," with over 180 employees serving 220 communities and over 50,000 accounts. (**Exhibit 1**, ¶¶ 3, 10, 13.)

27. The Flood Complaint alleges that Flood Brothers "has spent approximately $1,500,000 over the past four years on advertising, promotion and community relations." (**Exhibit 1**, ¶ 19.)

28. The Flood Complaint alleges that, while employed by Flood Brothers from 2014 to 2017, Shawn and Christopher Flood, with the help of their father, Brian Flood, began secretly operating a competing waste and recycling business to usurp customers, contracts, and business from Flood Brothers.

29. The Flood Complaint alleges various statutory and common-law actions based on a multitude of factual allegations of unfair and deceptive business practices and breaches of fiduciary duties committed by the SBC Flood Defendants and Flood, Inc. in the course of operating their waste and recycling business in competition with Flood Brothers.

30. The facts alleged below in paragraphs 31 through 46 are the matters alleged in the Flood Complaint which predate Grinnell's issuance of the primary-layer general liability

5

insurance policy to SBC Flood on February 19, 2018 (the "Primary Policy"). The paragraph (¶) references are to the paragraphs of the Flood Complaint.

31.     Beginning in 2007, Brian Flood was the Sales and Credit Manager for Flood Brothers. (¶ 22.) As Sales and Credit Manager, Brian Flood supervised all sales personnel, including his sons, Shawn and Christopher Flood. (¶ 22.) Flood Brothers sales personnel "would make contact with prospective customers and attempt to get them to enter into waste and recycling contracts with Flood Brothers for a specific time period," generally one to five years. (¶ 23.) Flood Brothers sales personnel would negotiate the specific services to be provided by Flood Brothers, the term of the contract, etc. (¶ 24.)

32.     Beginning in 2014, and during their employment with Flood Brothers, Brian, Shawn, and Christopher Flood breached their fiduciary duties to Flood Brothers and engaged in acts or omissions to benefit themselves and a competing waste and recycling company – Flood, Inc. – that one or more of them created or assisted in planning and creating. (¶¶ 28, 33.)

33.     Flood Brothers did not authorize the creation or operation of Flood, Inc., and Brian, Shawn, and Christopher Flood "actively concealed" Flood, Inc. from Flood Brothers during the period of January 1, 2014 to December 5, 2017. (¶¶ 33, 38.)

34.     "Specific examples of the diversion of business to Flood, Inc. to the detriment of Flood Brothers by Christopher Flood and Shawn Flood," during the period of "2014 to December 5, 2017" (¶ 52), include that Flood, Inc. "intentionally" used a logo that was "similar" to the logo used by Flood Brothers to deceive a Flood Brothers' customer. (¶ 56.)

35.     Prior to October 2017, Flood Brothers management began to receive information indicating that Shawn and Christopher Flood were operating a competing waste and recycling company that was diverting business from Flood Brothers. (¶ 87.)

302217531v1 1010661

36.     On October 5, 2017, Flood Brothers management confronted Brian Flood. (¶ 88.) Brian Flood was advised in this meeting that he was being relieved of his day to day operating duties at Flood Brothers and was to discontinue the competing business. (¶ 88.)

37.     On October 5, 2017, Brian Flood emailed Christopher and Shawn Flood and suggested that they "change the name of Flood, Inc. and tell everyone that they no longer do business or to sell (subcontract) the work to other companies." (¶ 89.)  "Brian Flood concluded this email message to his sons by stating to his sons: 'You put me in a bad spot.'" (¶ 89.)

38.     Brian Flood was relieved of his day to day responsibilities at Flood Brothers and has not performed any services for Flood Brothers since October 23, 2017. (¶ 93.)

39.     On December 4, 2017, Flood Brothers terminated the employment of Christopher Flood. (¶ 95.)

40.     On December 5, 2017, Flood Brothers terminated the employment of Shawn Flood. (¶ 94.)

41.     On December 6, 2017, Flood Brothers sent a letter and/or email to its customers advising them that Shawn Flood was no longer employed by Flood Brothers. (¶ 149.)

42.     Brian, Christopher, and Shawn Flood did not discontinue the competing business, but instead – with the aid and financial assistance of Karen Coley – they "furthered their previously contemplated plan to form and operate a new competing waste and recycling company, namely SBC Flood." (¶ 91.)

43.     On December 5, 2017, the same day Shawn Flood was terminated from Flood Brothers, an entity called Flood Waste Solutions, Inc. was incorporated in Illinois to provide waste and recycling services in competition with Flood Brothers. (¶ 96.)

302217531v1 1010661

44. On January 15, 2018, Flood Waste Solutions changed its name to S.B.C. Flood Waste Solutions, Inc. (¶ 96.)

45. Through prominently emphasizing the "Flood" name in its signage, business materials and promotional materials, the SBC Flood Defendants are attempting to trade on the name "Flood" and pass off SBC Flood as Flood Brothers, creating confusion in the waste and recycling services market in the Chicagoland area, and causing consumers to believe that SBC Flood is Flood Brothers or is associated with or sponsored by Flood Brothers. (¶ 106.)

46. "[S]ince at least December 5, 2017 and perhaps earlier," SBC Flood, Brian Flood, Shawn Flood, and Christopher Flood have engaged in acts or omissions to wrongfully pass off SBC Flood as Flood Brothers in an effort to induce existing Flood Brothers customers to terminate their contracts with Flood Brothers and enter into contracts with SBC Flood. (¶ 113.)

47. The allegations of paragraphs 31 through 46 above are referred to herein as the "Undisclosed Pre-Policy Disputes."

48. The Flood Complaint alleges specific examples of tortious acts and omissions by the SBC Flood Defendants from November 2017 (*e.g.*, ¶¶ 35, 181, 185, 203) through April 2018 (*e.g.*, ¶ 170).

49. The Flood Complaint alleges only intentional and knowing misconduct.

50. The eleven-count Flood Complaint seeks injunctive relief, forfeiture of all compensation received by Brian Flood from Flood Brothers since 2014, compensatory damages, punitive damages, and attorney's fees and costs.

## POLICY APPLICATION MISREPRESENTATIONS

### Primary Policy Application Misrepresentations

51. On or about February 9, 2018, Grinnell received a written Commercial Insurance Application form and a written Commercial General Liability Section on behalf of SBC Flood

8

(collectively, the "Primary Policy Application"). A true and correct copy of the Primary Policy Application is attached hereto as **Exhibit 2**.

52. The Primary Policy Application identifies Brian Flood as the "owner" of SBC Flood, and states that SBC Flood is a "new venture" which would start business on March 1, 2018.

53. The "Loss History" section of the Primary Policy Application requests that the applicant disclose "all claims or losses (regardless of fault and whether or not insured) or occurrences that may give rise to claims for the last _____ years."

54. There is a check mark for "Check if none" in the "Loss History" section Primary Policy Application.

55. The Primary Policy Application does not disclose any of the alleged facts, situations, or circumstances pled in the Flood Complaint.

56. The Primary Policy Application does not disclose the Undisclosed Pre-Policy Disputes.

57. In reliance on the representations made by SBC Flood to Grinnell, including those in the Primary Policy Application, Grinnell issued a policy of occurrence-based commercial general liability insurance on February 19, 2018 to "SBC Flood Waste Solutions Inc" as the first-named insured, policy number 0000869324, effective February 12, 2018 to February 12, 2019 (*i.e.*, the Primary Policy). A certified copy of the Primary Policy dated May 31, 2018 is attached hereto as **Exhibit 7** (bates stamped "GMRC00001" to "GMRC00059").

58. The total annual premium for the Primary Policy is $5,028.00. (See **Exhibit 7**, GMRC00002.)

9

59.     Prior to the issuance of the Primary Policy, Grinnell had not issued any other policies of insurance to SBC Flood.

60.     On information and belief, prior to Grinnell's issuance of the Primary Policy, SBC Flood was not a named insured on any policy of insurance issued by any other insurer.

61.     Grinnell would not have issued the Primary Policy if the Primary Policy Application had disclosed the Undisclosed Pre-Policy Disputes or the alleged facts, situations, and circumstances pled in the Flood Complaint.

62.     Through further investigation and pretrial discovery, additional misrepresentations and omissions made by SBC Flood in the Primary Policy Application and throughout the negotiation and underwriting process for the Primary Policy may be revealed. Grinnell accordingly reserves its rights as to any other misrepresentations and omissions which may further support its claims in this action.

**Commercial Auto Policy Application Misrepresentations**

63.     On or about February 9, 2018, Grinnell received a written Commercial Insurance Application form for a commercial auto policy for SBC Flood (the "Commercial Auto Application").  A true and correct copy of the Commercial Auto Application is attached hereto as **Exhibit 3**.

64.     The "Loss History" section of the Commercial Auto Application requests that the applicant disclose "all claims or losses (regardless of fault and whether or not insured) or occurrences that may give rise to claims for the last ____ years."

65.     There is a check mark for "Check if none" in the "Loss History" section Commercial Auto Application.

66.     The Commercial Auto Application does not disclose the Undisclosed Pre-Policy Disputes or any of the alleged facts, situations, or circumstances pled in the Flood Complaint.

10

67.     In reliance on the representations made by SBC Flood to Grinnell, including those in the Commercial Auto Application, Grinnell issued a policy of commercial auto insurance to "SBC Flood Waste Solutions Inc" as the first-named insured, policy number 0000869326, effective February 12, 2018 to February 12, 2019 (the "Commercial Auto Policy"). A true and correct copy of the Commercial Auto Policy is attached hereto as **Exhibit 8** (bates stamped "GMRC00060" to "GMRC00113").

68.     Grinnell would not have issued the Commercial Auto Policy if the Commercial Auto Application had disclosed the Undisclosed Pre-Policy Disputes or the alleged facts, situations, and circumstances pled in the Flood Complaint.

69.     In order for commercial auto coverage to be issued, Grinnell's policies and procedures require that general liability coverage also be issued.

70.     Grinnell would not have issued the Commercial Auto Policy to SBC Flood in the absence of a valid policy of primary-layer general liability insurance.

**The Umbrella Policy Application**

71.     In April 2018 (approximately one month before the Flood Complaint was filed on May 10, 2018), Grinnell received an inquiry from SBC Flood's insurance broker, PAR Insurance Services, Inc., concerning umbrella liability insurance.

72.     In April 2018, SBC Flood did not disclose to Grinnell the Undisclosed Pre-Policy Disputes or the alleged facts, situations, and circumstances pled in the Flood Complaint.

73.     On June 13, 2018, a Grinnell underwriter who was not personally aware of the Flood v. Flood Action gave SBC Flood's insurance broker, PAR Insurance Services, Inc., conditional authority to bind umbrella liability insurance, incepting June 13, 2018, "as long as you send me signed ACORD applications for it [the policy]." (See emails of June 13, 2018, true and correct copies of which are attached hereto as **Exhibit 4**.)

11

74.     On or about June 13, 2018, Grinnell received an Umbrella / Excess Section application form on behalf of SBC Flood which, on information and belief, reflects the signature of Brian Flood (the "Umbrella Policy Application").  A true and correct copy of the Umbrella Policy Application is attached hereto as **Exhibit 5**.

75.     Immediately preceding the signature line of the Umbrella Policy Application is the following:

> IMPORTANT - THE STATEMENTS (ANSWERS) GIVEN ABOVE ARE TRUE AND ACCURATE. THE APPLICANT HAS NOT WILLFULLY CONCEALED OR MISREPRESENTED ANY MATERIAL FACT OR CIRCUMSTANCE CONCERNING THIS APPLICATION. THIS APPLICATION DOES NOT CONSTITUTE A BINDER.

76.     The Umbrella Policy Application requests "Previous experience: (Give details of all liability claims exceeding $10,000 or occurrences that may give rise to claims, during the past five (5) years, whether insured or not. Specify date, coverage, description, amount paid, amount outstanding)…"

77.     The "Previous experience" section is blank, providing no response.

78.     The Umbrella Policy Application does not disclose any of the alleged facts, situations, and circumstances pled in the Flood Complaint.

79.     The Umbrella Policy Application does not disclose the Undisclosed Pre-Policy Disputes.

80.     The Umbrella Policy Application does not disclose that SBC Flood had been recently served with the Flood Complaint.

81.     Based upon the misrepresentations and omissions in the Umbrella Policy Application, Grinnell did not issue a policy of umbrella liability insurance to SBC Flood.

302217531v1 1010661

82.     SBC Flood has not made any payments to Grinnell for a policy premium for umbrella liability insurance, and Grinnell will not invoice or bill SBC Flood for any such amounts.

83.     As a matter of Illinois law, SBC Flood had and still has an obligation to update its Umbrella Policy Application answers to and including the date an actual policy is issued.

## GRINNELL'S NOTICE OF RESCISSION AND CANCELLATION

84.     By correspondence dated July 19, 2018, Grinnell has notified SBC Flood and its broker, PAR Insurance Services, Inc., that it has rescinded the Primary Policy and the Commercial Auto Policy, that no contract for umbrella liability insurance exists, and set forth various other alternative positions as expressed both in that letter and in this Complaint.  A true and correct copy of the letter of July 19, 2018 is attached hereto as **Exhibit 6**.

85.     Grinnell's correspondence of July 19, 2018 enclosed checks for the return premiums paid for the Primary Policy and the Commercial Auto Policy.

## COUNT I

### Rescission Of The Primary Policy

86.     Grinnell incorporates by reference paragraphs 1 through 85 above, as though fully restated herein.

87.     The Primary Policy – which was issued by Grinnell in reliance on the representations made by SBC Flood, including those in the Primary Policy Application – is subject to the following conditions, set forth in Section IV – Commercial General Liability Conditions:

6.     Representations

By accepting this policy, you agree: …

13

c. We have issued this policy in reliance upon your representations.

(**Exhibit 7**, GMRC00019.)

88. The Primary Policy Application (**Exhibit 2**) contains false representations and omissions because neither the Undisclosed Pre-Policy Disputes nor the alleged facts, situations, and circumstances pled in the Flood Complaint were disclosed.

89. The misrepresentations and omissions in paragraphs 53 to 56 of this Complaint materially affected Grinnell's acceptance of the risk, because Grinnell would not have issued the Primary Policy if the Primary Policy Application had been truthfully and accurately completed.

90. On information and belief, at the time the Primary Policy Application was submitted to Grinnell, SBC Flood had knowledge of the Undisclosed Pre-Policy Disputes and the alleged facts, situations, and circumstances pled in the Flood Complaint.

91. The Primary Policy is void *ab initio*.

## <u>COUNT II – IN THE ALTERNATIVE TO COUNT I</u>

### **Declaratory Judgment That**
### **Grinnell Has Cancelled The Primary Policy**

92. Grinnell incorporates by reference paragraphs 1 through 85 above, as though fully restated herein.

93. The Primary Policy – which was issued by Grinnell in reliance on the representations made by SBC Flood, including those in the Primary Policy Application – is subject to an Illinois Changes, Cancellation And Nonrenewal endorsement which sets forth the procedures for cancelling the policy. (**Exhibit 7**, GMRC00025.)

94. The Illinois Changes, Cancellation And Nonrenewal endorsement to the Primary Policy and ILCS 5/143.16a provide that Grinnell may cancel the Primary Policy if the policy is

14

obtained through a material misrepresentation or the risk originally accepted by Grinnell has measurably increased.

95.     Grinnell would not have issued the Primary Policy if the Primary Policy Application (**Exhibit 2**) had disclosed the Undisclosed Pre-Policy Disputes or the alleged facts, situations, and circumstances pled in the Flood Complaint.

96.     The risk originally accepted by Grinnell has measurably increased due to the Undisclosed Pre-Policy Disputes and the alleged facts, situations, and circumstances pled in the Flood Complaint.

97.     By correspondence dated July 19, 2018 (**Exhibit 6**), as an alternative to the rescission of the Primary Policy, Grinnell cancelled the Primary Policy effective September 17, 2018 at 12:01 a.m. CDT.

98.     On information and belief, the SBC Flood Defendants disagree with Grinnell's positions, and thus there is an actual and justiciable controversy between the parties.

## COUNT III – IN THE ALTERNATIVE TO COUNT I

### Declaratory Judgment
### No Duty To Defend Or To Indemnify Flood, Inc. Under The Primary Policy

99.     Grinnell incorporates by reference paragraphs 1 through 85 above, as though fully restated herein.

100.    Flood, Inc. is not the named insured or an additional insured under the Primary Policy, which was issued to SBC Flood as the named insured. (**Exhibit 7**, GMRC00002.)

101.    Under Section II – Who Is An Insured of the Primary Policy, Brian Flood, Shawn Flood, Christopher Flood, and Karen Coley are not insureds with respect to allegations in the Flood Complaint concerning acts and omissions committed solely on behalf of Flood, Inc. (**Exhibit 7**, GMRC00017-18.)

302217531v1 1010661

102.    As a result, Grinnell has no duty to defend Flood, Inc. under the Primary Policy as to the Flood v. Flood Action.

103.    For the same reasons, Grinnell has no duty to indemnify Flood, Inc. under the Primary Policy as to the Flood v. Flood Action.

104.    On information and belief, Flood, Inc., Brian Flood, Shawn Flood, Christopher Flood, and Karen Coley disagree with Grinnell's positions, and thus there is an actual and justiciable controversy between the parties.

## COUNT IV – IN THE ALTERNATIVE TO COUNT I

**Declaratory Judgment**
**No Duty To Defend Or To Indemnify**
**The SBC Flood Defendants Under Coverage A Of The Primary Policy**

105.    Grinnell incorporates by reference paragraphs 1 through 85 above, as though fully restated herein.

106.    The insuring agreement of Coverage A (Bodily Injury And Property Damage Liability) of the Primary Policy applies only to sums an insured is "legally obligated to pay as damages because of 'bodily injury' or 'property damage'" occurring "during the policy period" and "caused by an 'occurrence.'" (**Exhibit 7**, GMRC00009.)

107.    The Flood Complaint alleges only intentional misconduct, such that there is no "occurrence," because there is no "accident," as defined in the Primary Policy. (**Exhibit 7**, GMRC00023.)

108.    The Flood Complaint does not allege that Flood Brothers has suffered "bodily injury," or any physical injury, sickness or disease, as defined in the Primary Policy. (**Exhibit 7**, GMRC00021.)

302217531v1 1010661

109.    The Flood Complaint does not allege that Flood Brothers has suffered "property damage" as defined in the Primary Policy, which requires physical injury to tangible property or loss of use of tangible property that is not physically injured. (**Exhibit 7**, GMRC00023-24.)

110.    The Flood Complaint contains allegations of damages which predate the inception of the Primary Policy on February 12, 2018, such that these allegations do not satisfy the requirements of the insuring agreement of Coverage A, because they cannot constitute bodily injury or property damage "during the policy period" (February 12, 2018 to February 12, 2019). (**Exhibit 7**, GMRC00009.)

111.    To the extent the Flood Complaint alleges "bodily injury" or "property damage" (which it does not), it further alleges that one or more insureds knew of the "bodily injury" or "property damage" prior to the inception of the Primary Policy on February 12, 2018, such that the requirements of the insuring agreement of Coverage A are not satisfied. (**Exhibit 7**, GMRC00009.)

112.    The Flood Complaint seeks declaratory, equitable and/or injunctive relief, which does not constitute "damages because of 'bodily injury' or 'property damage.'" (**Exhibit 7**, GMRC00009.)

113.    The Flood Complaint seeks the forfeiture of compensation, which does not constitute "damages because of 'bodily injury' or 'property damage.'" (**Exhibit 7**, GMRC00009.)

114.    To the extent any other alleged damages, costs, declaratory relief, or injunctive relief, or any portion thereof, do not constitute sums that the SBC Flood Defendants are "legally obligated to pay as damages," there is no coverage under Coverage A of the Primary Policy. (**Exhibit 7**, GMRC00009.)

115.    To the extent the Flood Complaint alleges "bodily injury" or "property damage" (which it does not), the allegations are excluded by Exclusion a. (Expected Or Intended Injury) of Coverage A, because the Flood Complaint alleges only intentional acts and expected injury or damage. Thus, even assuming coverage otherwise is available under Coverage A of the Primary Policy (which it is not), Exclusion a. precludes coverage. (**Exhibit 7**, GMRC00010.)

116.    To the extent the Flood Complaint alleges "property damage" (which it does not), there are allegations only of "property damage" to personal property in the care, custody or control of an insured, such that it falls within Exclusion j. (Damage To Property) of Coverage A. Thus, even assuming coverage otherwise is available under Coverage A of the Primary Policy (which it is not), Exclusion j. precludes coverage. (**Exhibit 7**, GMRC00012-13.)

117.    To the extent the Flood Complaint alleges "property damage" (which it does not), certain or all of the allegations are excluded by the Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability With Limited Bodily Injury Exception endorsement. Thus, even assuming coverage otherwise is available under Coverage A of the Primary Policy (which it is not), this exclusion precludes coverage for all such allegations. (**Exhibit 7**, GMRC00027.)

118.    To the extent the Flood Complaint alleges "bodily injury" or "property damage" (which it does not), certain or all of the allegations are excluded by the Electronic Aggression Exclusion of the Distribution, Collection, Or Use Of Material In Violation Of Law Exclusion endorsement. Thus, even assuming coverage otherwise is available under Coverage A of the Primary Policy (which it is not), this exclusion precludes coverage for all such allegations. (**Exhibit 7**, GMRC00049-50.)

302217531v1 1010661

119. The Flood Complaint seeks attorney's fees and costs, which are not covered under Coverage A or the Supplementary Payments provision of the Primary Policy. (**Exhibit 7**, GMRC00016.)

120. Grinnell reserves all rights as to whether Brian Flood, Shawn Flood, Christopher Flood, and Karen Coley qualify as insureds under the Primary Policy with respect to the Flood v. Flood Action. (**Exhibit 7**, GMRC00017-18.)

121. To the extent any conditions precedent to coverage under the Primary Policy have not been satisfied, which include, but are not limited to, those conditions set forth in Section IV – Commercial General Liability Conditions, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit, there is no coverage under the Primary Policy. (**Exhibit 7**, GMRC00019.)

122. Coverage for the Flood v. Flood Action may be barred by other terms, provisions, conditions, definitions, exclusions, and endorsements of the Primary Policy.

123. Based on the allegations of the Flood Complaint, prior to SBC Flood's purchase of the Primary Policy, it knew or had reason to know that there was a substantial probability that it would incur or had already incurred liability for damages, such that the damages alleged in the Flood Complaint are "known losses."

124. "Known losses" are uninsurable as a matter of law and/or public policy.

125. The Flood Complaint alleges only intentional misconduct which is uninsurable as a matter of law and/or public policy.

126. The Flood Complaint seeks punitive damages.

127. The Primary Policy is subject to a Punitive Damages Exclusion endorsement, which provides that the policy does not provide indemnity for any punitive damages award,

19

302217531v1 1010661

judgment or settlement, or any interest or expenses accruing on that portion of an award or judgment relating to the assessment of punitive damages. (**Exhibit 7**, GMRC00046.)

128.     Additionally, the punitive damages sought in the Flood Complaint are uninsurable as a matter of law and/or public policy.

129.     As a result, Grinnell has no duty to defend the SBC Flood Defendants under Coverage A of the Primary Policy as to the <u>Flood v. Flood</u> Action.

130.     For the same reasons, Grinnell also has no duty to indemnify the SBC Flood Defendants under Coverage A of the Primary Policy as to the <u>Flood v. Flood</u> Action.

131.     On information and belief, the SBC Flood Defendants disagree with Grinnell's positions, and thus there is an actual and justiciable controversy between the parties.

<u>**COUNT V – IN THE ALTERNATIVE TO COUNT I**</u>

**Declaratory Judgment
No Duty To Defend Or To Indemnify
The SBC Flood Defendants Under Coverage B Of The Primary Policy**

132.     Grinnell incorporates by reference paragraphs 1 through 85 above, as though fully restated herein.

133.     The insuring agreement of Coverage B (Personal And Advertising Injury Liability) of the Primary Policy applies only to sums an insured is "legally obligated to pay as damages because of 'personal and advertising injury'" caused by an offense arising out of the named insured's business, but only if the offense was committed "during the policy period." (**Exhibit 7**, GMRC00014.)

134.     The Flood Complaint alleges acts and omissions committed by the SBC Flood Defendants which predate the inception of the Primary Policy on February 12, 2018, such that these allegations do not satisfy the requirements of the insuring agreement of Coverage B,

20

because they do not constitute offenses committed "during the policy period" (February 12, 2018 to February 12, 2019). (**Exhibit 7**, GMRC00014.)

135.     The Primary Policy's definition of "personal and advertising injury" provides in part:

14.     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

\*          \*          \*

d.     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

\*          \*          \*

f.     The use of another's advertising idea in your "advertisement"; or

g.     Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(**Exhibit 7**, GMRC00023.)

136.     The Flood Complaint does not contain any factual allegations of slander, libel, or disparagement committed by Brian Flood, Shawn Flood, Christopher Flood, or Karen Coley "with respect to their duties as [SBC Flood's] officers or directors" or "with respect to their liability as stockholders."  Accordingly, to the extent the allegations of the Flood Complaint fall within offense d. of the Primary Policy's definition of "personal and advertising injury," Brian Flood, Shawn Flood, Christopher Flood, and Karen Coley would not be insureds as to those allegations under Section II – Who Is An Insured of the policy. (**Exhibit 7**, GMRC00017-18.)

137.     The Flood Complaint alleges only "trademark" infringement and does not contain any factual allegations (in contrast to conclusory allegations) of the use of "another's advertising idea in your 'advertisement.'"  Therefore, the allegations of the Flood Complaint do not fall

within offense f. of the Primary Policy's definition of "personal and advertising injury," such that they do not satisfy the requirements of the insuring agreement of Coverage B. (**Exhibit 7**, GMRC00023.)

138.    The Flood Complaint alleges only "trademark" infringement and does not contain any factual allegations (in contrast to conclusory allegations) of infringement of "copyright, trade dress or slogan in your 'advertisement.'" Therefore, the allegations of the Flood Complaint do not fall within offense g. of the Primary Policy's definition of "personal and advertising injury," such that they do not satisfy the requirements of the insuring agreement of Coverage B. (**Exhibit 7**, GMRC00023.)

139.    Additionally, the allegations of the Flood Complaint do not fall within offenses f. and g. of the Primary Policy's definition of "personal and advertising injury" to the extent that an "advertisement" is not alleged, as defined in the policy, or there is no causal connection between any alleged "advertisement" and Flood Brothers' alleged injuries and relief sought.  (**Exhibit 7**, GMRC00021.)

140.    The alleged acts and omissions in the Flood Complaint are excluded by Exclusion a. (Knowing Violation Of Rights Of Another) of Coverage B because the Flood Complaint alleges only intentional acts and expected injury or damage. Thus, even assuming coverage otherwise is available under Coverage B of the Primary Policy (which it is not), Exclusion a. precludes coverage. (**Exhibit 7**, GMRC00014.)

141.    The alleged acts and omissions in the Flood Complaint are excluded by Exclusion b. (Material Published With Knowledge Of Falsity) of Coverage B because the Flood Complaint alleges that the SBC Flood Defendants intentionally made statements and representations which

they knew to be false. Thus, even assuming coverage otherwise is available under Coverage B of the Primary Policy (which it is not), Exclusion b. precludes coverage. (**Exhibit 7**, GMRC00014.)

142.     The Flood Complaint alleges acts and omissions dating back to 2014, years before the inception of the Primary Policy on February 12, 2018, such that these allegations are excluded by Exclusion c. (Material Published Prior To Policy Period) of Coverage B. Thus, even assuming coverage otherwise is available under Coverage B of the Primary Policy (which it is not), Exclusion c. precludes coverage for all such allegations. (**Exhibit 7**, GMRC00014.)

143.     The Flood Complaint alleges tortious interference with Flood Brothers' contracts and damages arising out of breach of contract, which are excluded by Exclusion f. (Breach of Contract) of Coverage B. Thus, even assuming coverage otherwise is available under Coverage B of the Primary Policy (which it is not), Exclusion f. precludes coverage for all such allegations. (**Exhibit 7**, GMRC00014.)

144.     "Trademark" infringement, as well as other allegations of the Flood Complaint, are excluded by Exclusion i. (Infringement Of Copyright, Patent, Trademark Or Trade Secret) of Coverage B. Thus, even assuming coverage otherwise is available under Coverage B of the Primary Policy (which it is not), Exclusion i. precludes coverage for all such allegations. (**Exhibit 7**, GMRC00015.)

145.     The allegations of the Flood Complaint concerning the domain name of SBC Flood's website (www.floodwaste.com) are excluded by Exclusion l. (Unauthorized Use Of Another's Name Or Product). Thus, even assuming coverage otherwise is available under Coverage B of the Primary Policy (which it is not), Exclusion l. precludes coverage for all such allegations. (**Exhibit 7**, GMRC00015.)

302217531v1 1010661

146. Certain or all of the allegations of the Flood Complaint are excluded by the Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability With Limited Bodily Injury Exception endorsement. Thus, even assuming coverage otherwise is available under Coverage B of the Primary Policy (which it is not), this exclusion precludes coverage for all such allegations. (**Exhibit 7**, GMRC00027.)

147. Certain or all of the allegations of the Flood Complaint are excluded by the Electronic Aggression Exclusion of the Distribution, Collection, Or Use Of Material In Violation Of Law Exclusion endorsement. Thus, even assuming coverage otherwise is available under Coverage B of the Primary Policy (which it is not), this exclusion precludes coverage for all such allegations. (**Exhibit 7**, GMRC00049-50.)

148. The Flood Complaint seeks equitable or injunctive relief, which does not constitute "damages because of 'personal and advertising injury.'" (**Exhibit 7**, GMRC00014.)

149. The Flood Complaint seeks forfeiture of compensation, which does not constitute "damages because of 'personal and advertising injury.'" (**Exhibit 7**, GMRC00014.)

150. To the extent any other alleged damages, costs, declaratory relief, or injunctive relief, or any portion thereof, do not constitute sums that the SBC Flood Defendants are "legally obligated to pay as damages," there is no coverage under Coverage B of the Primary Policy. (**Exhibit 7**, GMRC00014.)

151. The Flood Complaint seeks attorney's fees and costs, which are not covered under Coverage B or the Supplementary Payments provision of the Primary Policy. (**Exhibit 7**, GMRC00016.)

302217531v1 1010661

152.     Grinnell reserves all rights as to whether Brian Flood, Shawn Flood, Christopher Flood, and Karen Coley qualify as insureds under the Primary Policy with respect to the <u>Flood v. Flood</u> Action.

153.     To the extent any conditions precedent to coverage under the Primary Policy have not been satisfied, which include, but are not limited to, those conditions set forth in Section IV – Commercial General Liability Conditions, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit, there is no coverage under the Primary Policy. (**Exhibit 7**, GMRC00019.)

154.     Coverage for the <u>Flood v. Flood</u> Action may be barred by other terms, provisions, conditions, definitions, exclusions, and endorsements of the Primary Policy.

155.     Based on the allegations of the Flood Complaint, prior to SBC Flood's purchase of the Primary Policy, it knew or had reason to know that there was a substantial probability that it would incur or had already incurred liability for damages, such that the damages alleged in the Flood Complaint are "known losses."

156.     "Known losses" are uninsurable as a matter of law and/or public policy.

157.     The Flood Complaint alleges only intentional misconduct which is uninsurable as a matter of law and/or public policy.

158.     The Flood Complaint seeks punitive damages.

159.     The Primary Policy is subject to a Punitive Damages Exclusion endorsement, which provides that the policy does not provide indemnity for any punitive damages award, judgment or settlement, or any interest or expenses accruing on that portion of an award or judgment relating to the assessment of punitive damages. (**Exhibit 7**, GMRC00046.)

160.     Additionally, the punitive damages sought in the Flood Complaint are uninsurable as a matter of law and/or public policy.

302217531v1 1010661

161.     As a result, Grinnell has no duty to defend the SBC Flood Defendants under Coverage B of the Primary Policy as to the <u>Flood v. Flood</u> Action.

162.     For the same reasons, Grinnell also has no duty to indemnify the SBC Flood Defendants under Coverage B of the Primary Policy as to the <u>Flood v. Flood</u> Action.

163.     On information and belief, the SBC Flood Defendants disagree with Grinnell's positions, and thus there is an actual and justiciable controversy between the parties.

### COUNT VI

**Declaratory Judgment That**
**No Contract Exists Between SBC Flood And Grinnell For Umbrella Liability Insurance**

164.     Grinnell incorporates by reference paragraphs 1 through 85 above, as though fully restated herein.

165.     The Umbrella Policy Application (**Exhibit 5**) contains false representations and omissions because the Undisclosed Pre-Policy Disputes, the alleged facts, situations, and circumstances pled in the Flood Complaint, and the <u>Flood v. Flood</u> Action were not disclosed.

166.     The Umbrella Policy Application is incomplete because SBC Flood did not respond to the "Previous experience" section of the application.

167.     No valid contract for umbrella liability insurance exists between SBC Flood and Grinnell for various reasons, including:

a.     There was no acceptance of an offer to contract by Grinnell because the Umbrella Policy application is incomplete;

b.     There was no acceptance of an offer to contract by Grinnell due to misrepresentations in the Umbrella Policy Application, including those misrepresentations and omissions in paragraphs 76 to 80 of this Complaint;

26

    c.     There was no mutual assent or meeting of the minds due to misrepresentations in the Umbrella Policy, including those misrepresentations and omissions in paragraphs 76 to 80 of this Complaint;

    d.     SBC Flood has not made any payments for premiums to Grinnell for umbrella liability insurance; and

    e.     No policy of umbrella liability insurance was issued by Grinnell to SBC Flood such that the putative contracts terms are not reasonably certain or able to be determined.

168.    The parties do not have and never had any rights or obligations as to any contract for umbrella liability insurance.

169.    On information and belief, the SBC Flood Defendants disagree with Grinnell's positions, and thus there is an actual and justiciable controversy between the parties.

### COUNT VII – IN THE ALTERNATIVE TO COUNT VI

**Rescission Of The Binder For Umbrella Liability Insurance**

170.    Grinnell incorporates by reference paragraphs 1 through 85 above, as though fully restated herein.

171.    Any binder or contract for umbrella liability insurance, the existence of which Grinnell denies, is void *ab initio* due to the material misrepresentations and omissions set forth in paragraphs 76 to 80 of this Complaint.

### COUNT VIII – IN THE ALTERNATIVE TO COUNT VI

**Declaratory Judgment That**
**Grinnell Has Cancelled The Binder For Umbrella Liability Insurance**

172.    Grinnell incorporates by reference paragraphs 1 through 85 above, as though fully restated herein.

173.     To the extent it is determined in this action that a valid binder or contract for umbrella liability insurance exists between SBC Flood and Grinnell, 215 ILCS 5/143.16a provides that Grinnell may cancel the binder or contract if it is obtained through a material misrepresentation or the risk originally accepted by Grinnell has measurably increased.

174.     Based upon the Undisclosed Pre-Policy Disputes and the alleged facts, situations, and circumstances pled in the Flood Complaint – which were not disclosed in the Umbrella Policy Application (**Exhibit 5**) – the binder or contract for umbrella liability insurance was obtained through a material misrepresentation and/or the risk originally accepted by Grinnell has measurably increased.

175.     By correspondence dated July 19, 2018 (**Exhibit 6**), as an alternative to the rescission of the binder or contract for umbrella liability insurance, Grinnell cancelled the binder or contract effective September 17, 2018 at 12:01 a.m. CDT.

176.     On information and belief, the SBC Flood Defendants disagree with Grinnell's positions, and thus there is an actual and justiciable controversy between the parties.

## COUNT IX – IN THE ALTERNATIVE TO COUNT VI

**Declaratory Judgment**
**No Duty To Defend Or To Indemnify The SBC Flood Defendants Or Flood, Inc.**
**Under Any Binder Or Contract For Umbrella Liability Insurance**

177.     Grinnell incorporates by reference paragraphs 1 through 85 above, as though fully restated herein.

178.     To the extent it is determined in this action that a valid binder or contract for umbrella liability insurance exists between SBC Flood and Grinnell, which Grinnell denies, the binder or contract would be subject to various terms, provisions, limitations, exclusions, and conditions which would preclude coverage in whole or in part for the Flood v. Flood Action, and coverage would be precluded in whole or in part as a matter of law and/or public policy.

28

179.    On information and belief, the SBC Flood Defendants and Flood, Inc. disagree with Grinnell's positions, and thus there is an actual and justiciable controversy between the parties.

## COUNT X

### Rescission Of The Commercial Auto Policy

180.    Grinnell incorporates by reference paragraphs 1 through 85 above, as though fully restated herein.

181.    The Commercial Auto Application (**Exhibit 3**) contains false representations and omissions because neither the Undisclosed Pre-Policy Disputes nor the alleged facts, situations, and circumstances pled in the Flood Complaint were disclosed.

182.    The misrepresentations and omissions in paragraphs 64 to 66 of this Complaint materially affected Grinnell's acceptance of the risk, because Grinnell would not have issued the Commercial Auto Policy if the Commercial Auto Application had been truthfully and accurately completed.

183.    Grinnell would not have issued the Commercial Auto Policy to SBC Flood in the absence of a valid policy of primary-layer general liability insurance.

184.    On information and belief, at the time that the Commercial Auto Application was submitted to Grinnell, SBC Flood had knowledge of the Undisclosed Pre-Policy Disputes and the alleged facts, situations, and circumstances pled in the Flood Complaint.

185.    The Commercial Auto Policy is void *ab initio*.

302217531v1 1010661

## COUNT XI – IN THE ALTERNATIVE TO COUNT X

**Declaratory Judgment That**
**Grinnell Has Cancelled The Commercial Auto Policy**

186.     Grinnell incorporates by reference paragraphs 1 through 85 above, as though fully restated herein.

187.     The Commercial Auto Policy – which was issued by Grinnell in reliance on the representations made by SBC Flood, including those in the Commercial Auto Application – is subject to an Illinois Changes – Cancellation And Nonrenewal endorsement which sets forth the procedures for cancelling the policy. (**Exhibit 8**, GMRC00085.)

188.     The Illinois Changes – Cancellation And Nonrenewal endorsement to the Commercial Auto Policy and 215 ILCS 5/143.16a provide that Grinnell may cancel the Commercial Auto Policy if the policy is obtained through a material misrepresentation or the risk originally accepted by Grinnell has measurably increased.

189.     Grinnell would not have issued the Commercial Auto Policy if the Commercial Auto Application (**Exhibit 3**) had disclosed the Undisclosed Pre-Policy Disputes or the alleged facts, situations, and circumstances pled in the Flood Complaint.

190.     The risk originally accepted by Grinnell has measurably increased due to the Undisclosed Pre-Policy Disputes and the alleged facts, situations, and circumstances pled in the Flood Complaint.

191.     By correspondence dated July 19, 2018 (**Exhibit 6**), as an alternative to the rescission of the Commercial Auto Policy, Grinnell cancelled the Commercial Auto Policy effective September 17, 2018 at 12:01 a.m. CDT.

192.     On information and belief, the SBC Flood Defendants disagree with Grinnell's positions, and thus there is an actual and justiciable controversy between the parties.

**WHEREFORE**, Grinnell Mutual Reinsurance Company, respectfully requests judgment on its Complaint for Rescission and Declaratory Judgment as follows:

(1)     On Count I, that this Court enter an order rescinding the Primary Policy as void *ab initio*.

(2)     On Count II, in the alternative to Count I, that this Court declare that the Primary Policy is cancelled effective September 17, 2018 at 12:01 a.m. CDT such that the policy terminates as of that date.

(3)     On Count III, in the alternative to Count I, that this Court declare that Grinnell does not owe a duty to defend or indemnify Flood, Inc. under the Primary Policy as to the <u>Flood v. Flood</u> Action.

(4)     On Count IV, in the alternative to Count I, that this Court declare that Grinnell does not owe a duty to defend or indemnify the SBC Flood Defendants under Coverage A of the Primary Policy as to the <u>Flood v. Flood</u> Action.

(5)     On Count V, in the alternative to Count I, that this Court declare that Grinnell does not owe a duty to defend or indemnify the SBC Flood Defendants under Coverage B of the Primary Policy as to the <u>Flood v. Flood</u> Action.

(6)     On Count VI, that this Court declare that no valid contract for umbrella liability insurance exists between SBC Flood and Grinnell.

(7)     On Count VII, in the alternative to Count VI, that this Court enter an order rescinding any binder or contract for umbrella liability insurance as void *ab initio*.

(8)     On Count VIII, in the alternative to Count VI, that this Court declare that any binder or contract for umbrella liability insurance is cancelled effective September

302217531v1 1010661

17, 2018 at 12:01 a.m. CDT such that the binder or contract terminates as of that date.

(9)   On Count IX, in the alternative to Count VI, that this Court declare that Grinnell does not owe a duty to defend or indemnify the SBC Flood Defendants and Flood, Inc. under any binder or contract for umbrella liability insurance as to the Flood v. Flood Action.

(10)  On Count X, that this Court enter an order rescinding the Commercial Auto Policy as void *ab initio*.

(11)  On Count XI, in the alternative to Count X, that this Court declare that the Commercial Auto Policy is cancelled effective September 17, 2018 at 12:01 a.m. CDT such that the policy terminates as of that date.

(12)  That this Court award Grinnell such other and further relief as is just and proper.


Dated: July 19, 2018                    HINSHAW & CULBERTSON LLP


                                        By: */s/ Michael M. Marick*
                                            Counsel for Plaintiff, Grinnell Mutual
                                            Reinsurance Company

                                            Michael M. Marick (#6183285)
                                            Paris B. Glazer (#6309089)
                                            Hinshaw & Culbertson LLP
                                            151 North Franklin St., Suite 2500
                                            Chicago, Illinois 60606
                                            Tel. 312-704-3000
                                            mmarick@hinshawlaw.com
                                            pglazer@hinshawlaw.com

302217531v1 1010661