IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GRINNELL MUTUAL REINSURANCE
COMPANY,

                Plaintiff,

      v.

S.B.C. FLOOD WASTE SOLUTIONS,
INC., f/k/a FLOOD WASTE
SOLUTIONS, INC., FLOOD, INC.,
BRIAN J. FLOOD, SHAWN FLOOD,
CHRISTOPHER FLOOD, KAREN S.
COLEY, and FLOOD BROS.
DISPOSAL CO.,

                Defendants.

Case No. 18 C 4922

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Grinnell Mutual Reinsurance Company seeks to extract itself from participation in an Illinois state action between Flood Brothers Disposal Company and S.B.C. Flood Waste Solutions, Inc., Flood, Inc., Brian Flood, Shawn Flood, Christopher Flood, and Karen Coley, all named Defendants in this action. Plaintiff moves for partial summary judgment on Counts Three, Four, Five, and Six of its Complaint that seeks declaratory relief under 28 U.S.C. § 2201(a). The parties agree that a judgment in Plaintiff's favor on these counts disposes of the action. Defendants move to strike certain responses by Plaintiff to Defendants' Local Rule 56.1(b)(3)(C) Statement of

Additional Material Facts, and they ask the Court to deem those facts admitted. For the reasons stated herein, the Court denies Plaintiff's Motion for Summary Judgment (Dkt. No. 54) and Defendants' Motion to Strike (Dkt. No. 88).

## I.   BACKGROUND

Plaintiff Grinnell Mutual Reinsurance Company ("Grinnell") is an Iowa corporation engaged in the insurance business. (Pl.'s Resp. to Def.'s Stmt. of Facts ("PSOF") ¶ 1, Dkt. No. 75.) On February 19, 2018, Grinnell issued a commercial general liability insurance policy (the "Policy") to Defendant SBC Flood Waste Solutions, now known as SBC Waste Solutions, formerly known as Flood Waste Solutions ("SBC"). (PSOF ¶ 11.) The Policy is the subject of this dispute.

SBC is an Illinois corporation engaged in the waste-removal business (PSOF ¶ 2; Def.'s Resp. to Pl.'s Stmt. of Facts ("DSOF") ¶ 5, Dkt. No. 87.) Individual Defendants Brian Flood, Shawn Flood, Christopher Flood, and Karen Coley are party to this case as officers of SBC (with SBC, "the Defendants"), and thus potentially covered by the Policy. (DSOF ¶ 9.) Flood, Inc., now known as Get Cycled, Inc., is an Illinois corporation related to SBC, but not insured by Grinnell. (PSOF ¶ 3.) Flood Brothers Disposal Company ("Flood Bros.") is an Illinois corporation uninsured by Grinnell and the plaintiff in the underlying state action, *Flood Brothers*

*Disposal Company v. SBC Flood Waste Solutions*, Case Number 18-608. (*Id.* ¶ 5.)

### A. Allegations in the Underlying State Action

On May 10, 2018, three months after SBC and Grinnell entered into the Policy, Flood Bros. filed a complaint against SBC, Flood, Inc., Karen Coley, Brian Flood, Shawn Flood, and Christopher Flood in Illinois state court. (*Id.* ¶ 10.) The state complaint alleges eleven counts for damages and injunctive relief against the Defendants, including trademark infringement, breach of fiduciary duty, violation of the Illinois Uniform Deceptive Trade Practices Act ("IDTPA"), violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), conversion, fraud, defamation, and tortious interference of contract (*Id.* ¶¶ 220-328.)

In the state complaint, Flood Bros. alleged that Brian, Shawn, and Christopher Flood are former Flood Bros. employees. (State Answer ¶¶ 1 & 15, Doherty Decl., Ex. J, Dkt. No. 83.) Brian Flood began his position as Sales Manager in 1993. (*Id.* ¶ 6.) In that role, he supervised all sales personnel, which eventually included his sons, Shawn and Christopher Flood. (*Id.* ¶ 1.) Around 2014, Shawn and Christopher Flood began to operate a company called Flood, Inc., which performed some waste and recycling services. (*Id.* ¶¶ 49, 50, & 52.)

On October 23, 2017, Flood Bros. fired Brian Flood. (State Answer ¶ 88.) A little over a month later, on December 4 and 5, 2017, Flood Bros. also fired Christopher and Shawn Flood. (*Id.* ¶¶ 93–94.) On December 5, 2017, a new company entitled Flood Waste Solutions was incorporated in the State of Illinois. (*Id.* ¶ 96.) Shortly after the establishment of Flood Waste Solutions, the Defendants decided to change the name of the company to "SBC Flood Waste Solutions." (*Id.*) As described in the state answer, after Shawn and Christopher were fired, they, along with their father, Brian Flood, and Brian Flood's partner, Karen Coley, formed the new company to "compete against Flood Bros. in the Chicagoland area." (*Id.* ¶ 1.)

The state complaint alleges that the Defendants "engaged in efforts to pass SBC off as Flood Bros. in order to deceive, mislead and confuse the public, for the purpose of misappropriating business opportunities or contracts that belong to Flood Bros. or to unfairly compete with Flood Bros. to obtain customers." (State Answer ¶ 108.) The deception included similarities between Flood Bros.' and SBC's "logo and signage." (*Id.* ¶ 283.) The state complaint cites to a graphic design contest created by Christopher Flood, which stated:

> I'm opening a waste/recycling company. I need
> something not to [sic] crazy but simple at the
> same time. We are an Irish company an [sic] a
> four leaf clover would be something we are

> open to. I want the FLOOD to stand out the
> most an [sic] the "waste Solutions" can be in
> writing below it. Maybe incorporate the four
> leaf clover in the Flood. But again I'm open
> to anything. . .

(*Id.* ¶ 100.) Included in the state complaint are various photographs of the logos and various designs related to both Flood Bros. and SBC. (*Id.* ¶¶ 13–15, 56, 97, 101, 103–04 & 119.) The state complaint alleges that, when the misappropriation was unsuccessful and customers realized SBC was not Flood Bros., both Shawn and Christopher Flood would discourage existing customers from continuing to receive services from Flood Bros. through defamatory speech.

For example, the state complaint alleges that individual Defendants told customers that Flood Bros. was being sold to a large corporate waste company, and SBC was created by employees who "did not want to be a part of this transaction." (*Id.* ¶ 152.) Christopher Flood stated that the large corporate waste company would "take over [the customer's] account and increase rates." (*Id.* ¶¶ 169–70.) According to the state complaint, Shawn Flood also made an anonymous call to a Flood Bros. customer and told them that Flood Bros. stole one of the customer's trash compactors. (*Id.* ¶ 176.)

In total, the state complaint pleads eleven counts. Counts One and Two allege common law trademark infringement

through use of the word "Flood." (*Id.* ¶¶ 220–57.) Counts Three through Five allege breach of fiduciary duty against individual Defendants Brian, Christopher, and Shawn Flood for operating Flood, Inc. while simultaneously being employed by Flood Bros. (*Id.* ¶¶ 258–75.) Count Six alleges SBC "pass[ed] off its goods or services as those of another," "cause[d] likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another," and "disparage[d] the goods, services or business of another by false or misleading representation of fact" in violation of the IDTPA through SBC and Flood, Inc.'s name and trade dress, as well as comments made by Christopher Flood indicating that "Flood Bros. was going to be sold to a large corporate waste company." (*Id.* ¶¶ 276–89.)

Count Seven alleges that Defendants engaged in unfair and deceptive acts, as described in Count Six, in violation of the ICFA. (*Id.* ¶¶ 290–300.) Count Eight alleges conversion, claiming the Defendants still have copies of some contracts between customers and Flood Bros. (*Id.* ¶¶ 301–05.) Count Nine alleges fraud regarding expenses incurred by Defendants and reimbursed by Flood Bros. (*Id.* ¶¶ 306–14.) Count Ten alleges defamation against Shawn Flood, as he allegedly called a customer and told the customer that Flood Bros. had stolen the customer's trash compactor. (*Id.* ¶¶ 315–18.) Finally, Count Eleven alleges a tortious interference

claim, specifically that Defendants caused a customer to terminate its relationship with Flood Bros. (*Id.* ¶¶ 319–28.)

### B. Insurance Coverage

As part of its startup operations, SBC was issued the Policy from Grinnell on February 19, 2018. (PSOF ¶ 3.) The Policy provided the following insurance coverage for:

> "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(Policy at 15, Vliet Decl., Ex. C, Dkt. No. 57-3.) The Policy defines "personal and advertising injury" as follows:

> "Personal and advertising injury" means injury, including the consequential "bodily injury," arising out of one or more of the following offenses:
> ***
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> ***
> f. The use of another's advertising idea in your "advertisement"; or
>
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."
> ***
> "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material
places on the Internet or on similar
electronic means of communication; and

b. Regarding web sites, only that part of a
web site that is about your goods, products,
or services for the purposes of attracting
customers or supporters is considered an
advertisement.

(*Id.* at 22 & 24.) The Policy also included the following

exclusions:

This insurance does not apply to:
                    ***
c. Material Published Prior to Policy Period
Policy
"Personal and advertising injury" arising out
of oral or written publication, in any manner,
of material whose first publication took place
before the beginning of the policy period."
                    ***
i. Infringement of Copyright, Patent,
Trademark or Trade Secret
"Personal and advertising injury" arising out
of the infringement of copyright, patent,
trademark, trade secret or other intellectual
property rights. Under the exclusion, such
other intellectual property rights do not
include the use of another's advertising idea
in your "advertisement."

However, this exclusion does not apply to
infringement, in your "advertisement," of
copyright, trade dress or slogan.
                    ***
l. Unauthorized Use of Another's Name or
Product
"Personal and advertising injury" arising out
of the unauthorized use of another's name or
product in your e-mail address, domain name or
metatag, or any other similar tactics to
mislead another's potential customers.

- 8 -

(*Id.* at 15–16.) Finally, the Policy limits the insurance through the following provisions:

> 1. If you are designated in the Declarations as:
>
> ***
>
> d. An organization other than a partnership, joint venture or limited liability company, you are insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

(*Id.* at 18.)

## C. Procedural Posture

On May 24, 2018, SBC notified Grinnell of the state action. (PSOF ¶ 10.) On July 19, 2020, Grinnell filed its complaint in federal court seeking, *inter alia,* a declaration that it had no duty to defend or indemnify the SBC Defendants in the state action.

During discovery, Grinnell determined the following additional facts, which are not disputed by SBC. In January of 2018, Shawn Flood emailed a third party and alleged the sale of Flood Brothers, stating, "Flood Bro [sic] is in the process of a sale of me and my brother and father already have everything in place for the new company." (1/19/2018 Email, Sealed Vliet Decl., Ex. G, Dkt. No. 58-4.) On February 1, 2018, Karen Coley posted a photo of SBC's new logo on Facebook and stated that she "Started New Job at SBC Flood Waste Solutions." (2/1/2018 Facebook Post,

Vliet Decl., Ex. F, Dkt. No. 57-6.) The Facebook post notes that "S.B.C. Flood Waste Solutions, Inc., is woman owned minority business that is NOT affiliated in ANY way with Flood Bros. Disposal, Inc." (*Id.*) Additionally, SBC began using the logo on business documents prior to February 19, 2020. (Collected Documents, Sealed Vliet Decl., Ex. G, Dkt. No. 58-1.) SBC used this design from February 2, 2018 until January of 2019, when the Defendants changed the name again—this time to "SBC Waste Solutions, Inc." (*Id.*; DSOF ¶ 2.)

Grinnell now moves for partial summary judgment, seeking declaratory relief under 28 U.S.C. § 2201(a). (Mot., Dkt. No. 54.) In response to Grinnell's summary judgment briefing, Defendants move to strike certain responses by Grinnell to its Local Rule 56 Statement of Additional Material Facts. (Mot. to Strike, Dkt. No. 88.) In that Motion, Defendants ask that the Court deem certain facts admitted for the purpose of deciding Grinnell's Motion.

Grinnell asks the Court to find that it has no duty to defend in the state action because Flood Bros. does not allege an offense covered under the Policy, or, in the alternative, because Defendants knew or should have known that there was a substantial probability they would suffer a loss under the known loss doctrine.

## II. **LEGAL STANDARD**

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court construes all facts and reasonable inferences in the light most favorable to the non-moving party. *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 874 (7th Cir. 2015).

## III. **DISCUSSION**

The Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332. In a diversity suit, the duty of the court is to "predict what the state's highest court would do if presented with the identical issue." *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004). The parties agree that Illinois law applies here.

Under Illinois law, "the duty to defend is broader than the duty to indemnify," so if there is no duty to defend, there is no duty to indemnify. *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 693 (7th Cir. 2009); *see also Crum & Forster Managers Corp. v. Resolution Tr. Corp.*, 620

- 11 -

N.E.2d 1073, 1081 (Ill. 1993). Illinois courts have held that the insurer has a duty to defend if the underlying complaint "contains allegations that potentially fall within the scope of coverage." *Momence Meadows*, 566 F.3d at 694 (citation omitted). An insurer may decline to defend only if "it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy." *Id.* (citation omitted). The insurer is obligated to defend both valid and "groundless, false, or fraudulent" allegations. *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005).

When determining whether allegations fall within the scope of coverage, the Court does not determine what actually occurred, as that is being litigated in the underlying action. Nor does the Court give much weight to the "legal labels used by a plaintiff." *Comm. Indem. Co. v. DER Travel Serv., Inc.*, 328 F.3d 347, 349 (7th Cir. 2003). Instead the Court must review the factual allegations in the underlying complaint. If the "alleged conduct arguably falls within at least one of the categories of wrongdoing listed in the policy," then the insurance company has a duty to defend as contracted. *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 346 (7th Cir. 2010) (citing *Lexmark Int'l, Inc.*

*v. Transp. Ins. Co.*, 761 N.E.2d 1214, 1221 (Ill. App. Ct. 2001)).
The underlying complaint must be "liberally construed in favor of
the insured." *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578
N.E.2d 926, 930 (Ill. 1991).

### A. Motion to Strike

As an initial matter, the Court addresses SBC's Motion to
Strike certain responses from Grinnell's response to SBC's Local
Rule 56.1(b)(3)(C) Statement of Additional Material Facts. (Mot.
to Strike, Dkt. No. 88.) In it, SBC notes that Grinnell responds
to many of SBC's statements with references to the underlying
documents, which frustrates the purpose of Local Rule 56.1. SBC
argues that the Court is entitled to strict compliance. (Mot. to
Strike at 2. (citing *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233
F.3d 524, 527 (7th Cir. 2000) (upholding a district court's
decision to strike a statement of material facts that contained
"evasive and contradictory answers and legal argument" and instead
relying on the remaining party's statements); *Ammons v. Aramark
Uniform Servs. Inc.*, 368 F.3d 809, 817–18. (7th Cir. 2004)
(upholding a district court's decision to strike answers that cited
to a 30-page exhibit without a page reference).) As such, it asks
the Court to require strict compliance, strike the improper
responses, and deem SBC's statements admitted.

- 13 -

The Court denies SBC's Motion to Strike. The Court agrees that most of Grinnell's responses were unhelpful. For example, see Defendant's Local Rule 56.1(b)(3)(C) Statement 12 with Grinnell's response:

> 12. On August 18, 2018, the SBC Defendants filed Answers to Flood Bros.' Complaint, denying the material allegations asserted therein. (*See,* Doherty Declaration, Ex. J.)
>
> RESPONSE: Grinnell disputes that the allegations in Paragraph 12 are material to the Motion or the Opposition. Grinnell states that Exhibit J to the Doherty Declaration speaks for itself and denies any allegations inconsistent therewith.

(PSOF ¶ 12.) Exhibit J, as referenced in Grinnell's response to Statement 12, is the 119-page answer in the state action. (State Answer ¶¶ 1–328.) The Court declines to strike Grinnell's responses, however, because SBC's materials are facially deficient. For example, SBC's Statement of Material Facts heavily relies on SBC's "Exhibit 1" to provide "facts" to the Court. (PSOF ¶¶ 4, 5, 11, 17, 18, 26, 32 & 35.) Exhibit 1, an affidavit from attorney Andrew Cory, consists almost entirely of expert legal opinions and conclusions, such as, "it is my opinion that Grinnell's position not to honor coverage under the Policy was a breach of contract . . ." (Cory Aff. ¶ 1.5, Def.'s Stmt. of Facts, Ex. 1, Dkt. No. 74.) Because neither party strictly complied with Local Rule 56.1, the Court reviewed and relied upon the underlying

documents, specifically the state answer, to resolve the summary judgment motion.

### B. Summary Judgment Motion

Grinnell argues that none of the eleven counts in the underlying state action qualify for Policy coverage. While Grinnell acknowledges that Counts Six, Seven, and Ten in the state complaint include allegations of both personal and advertising injuries, it argues that the Policy exclude these injuries, citing three specific areas in the policy: the "Definitions" section; the "Exclusions" section; or the "Who Is An Insured" section. (DSOF ¶¶ 18-21.) SBC acknowledges that many of the counts in the state complaint are not covered, but contends that Counts Six, Seven, and Ten fall within the Policy's coverage as at least one of the following: trade dress infringement, advertising idea infringement, and defamation.

Under the Policy, a "personal and advertising injury" includes the following: (1) "oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;" (2) "the use of another's advertising idea in your advertisement," and (3) "infringing upon another's copyright, trade dress or slogan in your advertisement." (Policy at 24.) The Court first addresses whether the alleged defamation

is covered by the Policy, and then reviews whether the alleged advertising injury encompasses either the use of another's advertising idea or trade dress infringement, as defined by the Policy. The Court then reviews whether the Policy's prior publication exclusion excludes coverage.

### 1. Defamation Claim

Under Illinois law, advertisement "is a subset of persuasion and refers to dissemination of prefabricated promotional material." *Zurich Ins. Co. v. Amcor Sunclipse N. Am.*, 241 F.3d 605, 607 (7th Cir. 2001); *see also First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803-04 (7th Cir. 2001) ("Advertising is a form of promotion to anonymous recipients, as distinguished from face-to-face communication."); *Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 761 N.E.2d 1214, 1223 (Ill. App. Ct. 2001) ("The term 'advertising' has been held to refer to the widespread distribution of promotional material to the public at large.") (citing *Int'l Ins. Co. v. Florists' Mut. Ins. Co.*, 559 N.E.2d 7, 10 (Ill. App. Ct. 1990)).

However, the Policy groups both advertising and personal injury into one category. (Policy at 15.) As a result, it includes the personal injury of defamation in the first definition because it encompasses injuries resulting from "oral or written publication, of any manner, of material that slanders or libels."

- 16 -

(*Id.* at 24.) Under Illinois law, the tort of defamation requires "a false statement about the plaintiff, . . . an unprivileged publication of that statement to a third party, and that this publication caused damages." *Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 839 (Ill. 2006). Publication, in this sense, is different than the widespread public dissemination required in advertising injuries. For defamation, it is sufficient to allege that the statement was "heard or read by some third person with understanding." Ronald Hankin, *Publication*, 43 CHI.-KENT L. REV. 44, 44 (1966).

The state complaint alleges that Shawn Flood anonymously called a third party and falsely stated that Flood Bros. had stolen a trash compactor. (State Answer ¶¶ 176 & 316–18.) It additionally alleges that Shawn and Christopher Flood falsely stated that Flood Bros. was going to be sold to a large corporate waste company, customers rates would increase, and that SBC was started because Shawn Flood, Brian Flood, and Christopher Flood wanted to remain a family-owned company. (*Id.* ¶¶ 152, 172–73, 185, 190, 287 & 293.)

Grinnell does not dispute that the state complaint pleads defamatory injury. Instead, Grinnell argues that the Policy coverage is limited by an ancillary provision in the definition section. Under the Policy, the "personal and advertising injury" must be "caused by an offense arising out of your business."

(Policy at 15.) The Policy also states that "'executive officers' and directors are insureds, but only with respect to their duties as your officers or directors." (*Id.* at 18.) As a result, Grinnell argues that, together, these two provisions exclude one of the defamatory statements alleged in the state complaint. Grinnell argues that the Policy does not cover Shawn Flood's anonymous phone call to a Flood Bros. customer. Characterizing the event as "[a]nonymously reporting alleged criminal activity of third parties completely unrelated to the company," Grinnell argues there is no duty to defend. (Grinnell Memo. at 13, Dkt. No. 55.)

In support, Grinnell cites the First Circuit case *Hansen v. Sentry Insurance Company*, decided under New Hampshire corporate fiduciary law. 756 F.3d 53, 57 (1st Cir. 2014). In *Hansen*, the parties dispute insurance coverage related to a state action where Hansen had been sued by his former employer, Wilcox Industries. In the state action, Wilcox Industries alleged that Hansen "made derogatory statements about Wilcox and its products during the time Hansen served as vice president" and "[sold] other products that are completely unrelated to the [Wilcox] line." *Id.* at 56. Hansen asked Sentry Insurance Company, who had a policy with Wilcox Industries, to defend him in the state action because he was an "officer or employee" of Wilcox Industries under the policy. *Id.* When Sentry Insurance declined to provide coverage, Hansen sued.

*Id.* at 57. The First Circuit held that, under New Hampshire law, Hansen "made such statements in furtherance of his own business interests, not Wilcox's." *Id.* at 62. This conclusion was "fatal," as "[d]amages arising out of anything other than Wilcox's business are simply not covered by [Wilcox's insurance policy]." *Id.*

Even if the Court were inclined to follow New Hampshire law, which it is not, the facts do not apply here. Defendants are not invoking coverage from a former employer's insurance policy in a suit where the same employer is adverse in the underlying state action. Instead, the allegedly false statement was made in furtherance of the business interests of the policyholder, SBC. According to the state complaint, Shawn Flood's anonymous call was a part of a "smear campaign on behalf of his new company SBC Flood . . . against Flood Bros." (State Answer ¶ 316.) Regardless of whether Shawn Flood was acting within his capacity as an officer or director, the personal injury alleged in the complaint creates liability for SBC under Illinois law.

Grinnell's insurance policy covers SBC as an "organization" without surrounding language limiting coverage. (DSOF ¶ 21.) In Illinois, companies "are liable for the defamatory statements of their employees under the doctrine of *respondeat superior*." *DePinto v. Sherwin-Williams Co.*, 776 F.Supp.2d 796, 803 (N.D. Ill. 2011); *Reed v. Nw. Pub. Co.*, 530 N.E.2d 474, 484 (Ill. 1988). In

*Lion Oil Company v. Sinclair Refinery Company*, Lion Oil brought a defamation action alleging that Sinclair Refinery's employees had told Lion Oil customers that Lion Oil was on the verge of bankruptcy. 252 Ill. App. 92, 104 (1929). Although Sinclair Refinery denied it was the source of the slander and denied it had directed its employees to spread the slander, the court held that, under *respondeat superior*, liability for the employees' statements extended to the company. *Id.* at 101. This was true even if the employer, as the principal, was ignorant and "the agent in committing it exceeded his actual authority or disobeyed the express instructions of his principal." *Id.*

Moreover, the Illinois Supreme Court has recognized that anonymous speech can be defamatory. *See Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1216–19 (Ill. 1996) (finding the description of plaintiff in a "fictional" short story published in *Seventeen* by "a writer in Southern Illinois" contained a *per se* defamation claim). The Illinois Supreme Court additionally has permitted discovery when individuals sue over defamatory comments anonymously posted online. *Maxon v. Ottawa Pub. Co.*, 929 N.E.2d 666, 676 (Ill. App. Ct. 2010) (holding that "once the petitioner has made out a *prima facie* case for defamation," he or she is entitled to use Illinois Supreme Court Rule 224 to discover the identity of anonymous internet commenters).

Grinnell argues, as it must to deny SBC coverage under the Policy, that Shawn Flood's defamatory conduct is "completely unrelated" to SBC. (Grinnell Memo. at 13.) The state complaint alleges the opposite. Count Ten specifically alleges that Shawn Flood made the anonymous phone call "on behalf of his new company SBC Flood." (State Answer ¶ 317.) More generally, the state complaint describes a coordinated effort by SBC, Flood Inc., and the individual Defendants to deprive Flood Bros. of customers. As pleaded, the allegations about Shawn Flood's phone call state a "personal and advertising injury," as it is "oral [. . .] publication, in any manner, of material that slanders." (Policy at 24.)

### 2. Use of Another's Advertising Idea or Trade Dress Infringement

Grinnell claims that "all of the [state] Complaint's allegations relating to SBC's advertisements are limited to SBC's use of the name 'Flood.'" (Grinnell Memo. at 3.) Grinnell then states that the trademark violations fall within the exception to the Policy. Injuries arising out of "the infringement of copyright, patent, trademark, trade secret or other intellectual property rights" are not covered by the Policy. (Policy at 16.) As a result, Grinnell argues that there are no advertising injuries in the underlying state action that trigger its duty to defend. To the extent that there is language in the state complaint suggesting

otherwise, Grinnell states that the Court should disregard it as a "conclusory legal label." (Grinnell Memo. at 5.)

SBC argues that the state complaint alleges three types of advertising injuries: (1) trademark infringement, (2) use of another's advertising idea, and (3) trade dress infringement. Because Illinois law requires the insurance carrier to cover an entire lawsuit if any of the lawsuit falls within the Policy's coverage, SBC argues that Grinnell has a duty to defend in the underlying state action. The Court first defines what is excluded because of the Policy's trademark exception clause, and then reviews whether there is advertising idea or trade dress infringement alleged in the state complaint.

Illinois common law trademark infringement tracks federal law. *Eagle Forum v. Phyllis Schlafly's Am. Eagles*, 451 F.Supp.3d 910, 919 (S.D. Ill. 2020). As such, a trademark can "includ[e] any word, name, symbol, or device, or any combination thereof." 15 U.S.C. § 1127. Here, the state complaint alleges that Flood Bros. has a common law trademark on the word "Flood." (State Answer ¶¶ 220-57.) Under the Policy, Grinnell does not insure injuries related to trademark infringement. (Policy at 16.) As a result, the parties agree that all allegations regarding the word "Flood" are trademark allegations and thus fall under the exception to the Policy.

In contrast, advertising idea infringement "occurs when the insured wrongfully takes a competitor's idea about the solicitation of business." *Del Monte Fresh Produce N.A., Inc. v. Transp. Ins. Co.*, 500 F.3d 640, 646 (7th Cir. 2007). SBC argues that "prominently emphasizing" the name and display of Flood to confuse customers constitutes an advertising idea. (Resp. at 7, Dkt. No. 80.) The Court disagrees. Under SBC's definition, there is no meaningful difference between using the word "Flood" as a trademark, and "prominently emphasizing" the Flood name as an advertising idea. The Court recognizes that "'misappropriation of advertising ideas or style of doing business . . . encompasses claims for trademark infringement so long as there is a sufficient nexus between the injury and the injured party's advertising." *Cent. Mut. Ins. Co. v. StunFence, Inc.*, 292 F.Supp.2d 1072, 1079 (N.D. Ill. 2003). However, in this case, the Policy clearly exempts trademarks from its coverage. As such, the underlying state complaint must show an advertising idea *beyond* trademark infringement. Rephrasing the same trademark allegation fails to do this.

In its briefing, SBC hints that because of the "Flood family fight," SBC, not Flood Bros., is the rightful inheritor of the Flood family business, and use of the family name Flood in this context constitutes an advertising idea. (State Answer ¶ 2.) To

the extent that SBC aimed in its marketing strategy to be a better Flood family business, this message was not communicated via advertising. As previously stated, advertisement must encompass "dissemination of prefabricated promotional material." *Zurich Ins. Co.*, 241 F.3d at 607. SBC's communications promoting itself as a Flood family business were through conversations with existing Flood Bros. customers. (State Answer ¶ 174.) Persuasive speech, alone, is not advertising, and therefore cannot be an advertising idea. Because these statements do not constitute advertising, and because all other allegations regarding an "advertising idea" are simply a recitation of the trademark violation, the underlying complaint contains no allegations of a misappropriation of an advertising idea.

SBC next argues that the underlying state complaint includes allegations of trade dress violations, and these allegations fall within the scope of the Policy. SBC first repeats its argument that there are trade dress violations because of the "prominent emphasis" on the name Flood in SBC's logo, promotional materials, and invoices. Second, SBC argues the underlying state complaint alleges infringement on the overall appearance of the product and services offered, which constitutes trade dress infringement. Grinnell argues that SBC's arguments are simply a reiteration of the use of the name "Flood" as a trademark violation.

The Court rejects SBC's first argument. For the reasons stated above, a prominent emphasis on the name "Flood" alone does not qualify as a trade dress violation. This simply restates the trademark violation. To hold otherwise would render the Policy's exception to its coverage meaningless. Furthermore, "trade dress alone denotes only a subset of trademark law" that generally does not involve text. *StunFence*, 292 F.Supp.2d at 1077.

Trade dress constitutes "the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n.1 (1992). A review of the underlying state complaint shows that Flood Bros. alleged the following conduct:

> SBC Flood, Coley and the Individual Defendants intentionally designed SBC Flood's logo and signage displayed on its containers, trucks, letter head, business cards and promotional materials to emphasize FLOOD in order to trade upon the good name and reputation of Flood Bros. and confuse consumers of waste and recycling services.
>
> SBC Flood's name and trade dress in connection with the provision of waste and recycling services in the Chicagoland area creates confusion or misunderstanding as to the source and sponsorship of the provider of waste and recycling services.

(State Answer ¶¶ 283–84.) Included in the underlying state complaint are various photographs of the logos and various designs

related to both Flood Bros. and SBC. (*Id.* ¶¶ 13-15, 56, 97, 101, 103-04 & 119.) Additionally, the complaint describes Shawn Flood's request to design a logo for an "Irish company." (State Answer ¶ 100.) Shawn Flood suggests a "four leaf clover," as well as requesting the word "FLOOD to stand out the most." (*Id.*) This description hews closely to the green and orange colors and shamrock imagery in Flood Bros.' logo. The eventual logo and designs used by SBC are green in color and include a leaf motif, which indicate points of confusion beyond the name "Flood." The Court refrains from any analysis on the success of these claims. Nevertheless, trade dress infringement allegations are present in the underlying state complaint and thus covered under the Policy.

### 3. *Prior Publication Exclusion*

In its motion for summary judgment, Grinnell offers extrinsic evidence that the advertising and personal injuries alleged in the state action were published before the dates alleged in the state complaint. Grinnell provides a February 1, 2018, Facebook post and early February 2018 invoices to show that the trade dress had been published earlier than the Policy's start date. (DSOF ¶¶ 37-39.) Similarly, Grinnell offers evidence to prove that Shawn Flood stated in January 2018 to a third party that Flood Bros. was going to be sold. (*Id.* ¶¶ 44-46.) The Defendants do not dispute these facts. Instead, the Defendants argue that the evidence presented

by Grinnell is outside the pleadings in the state action and thus should not be admitted.

Under Illinois law, "the duty to defend flows in the first instance from the allegations in the underlying complaint." *Fid. & Cas. Co. of New York v. Envirodyne Eng'rs, Inc.*, 461 N.E.2d 471, 473 (Ill. App. Ct. 1983). While this generally requires courts to limit their review to the underlying action's pleadings, "a circuit court may, under certain circumstances, look beyond the underlying complaint in order to determine an insurer's duty to defend." *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1019 (Ill. 2010). At the summary judgment stage, an insurance company "may properly challenge the existence of such a duty by offering evidence to prove that the insured's actions fell within the limitations of one of the policy's exclusions." *Wilson*, 930 N.E.2d at 1020 (Ill. 2010) (citing *Envirodyne Eng'rs, Inc.*, 461 N.E.2d at 473). If, however, the extrinsic evidence determines "an issue crucial to the insured's liability in the underlying case," it should not be considered. *Envirodyne Eng'rs, Inc.*, 461 N.E.2d at 475.

Here, Grinnell provides evidence to show that the date the alleged injuries began is earlier than the dates alleged in the state complaint. Although the Court can imagine a situation where exact dates and times would affect a crucial issue in the state action, it does not here. For the trade dress claims, the

underlying state complaint alleges that SBC's misleading recycling containers began to be delivered "on or about the end of February 2018 or the beginning of March 2018." (State Answer ¶ 119.) Grinnell presents evidence the injury began earlier, on February 1, 2018. (2/1/2018 Facebook Post.) Similarly, the state complaint's first alleges Shawn Flood published that Flood Bros. was being sold to a large waste company "in the middle of March 2018." (*Id.* ¶¶ 150–52.) Grinnell provides evidence suggesting Shawn Flood said Flood Bros. was "in the process of a sale" in January 2018. (1/19/2018 Email.) Whether the alleged injury began in the beginning or end of the first quarter of 2018 does not affect whether the Defendants have liability under Illinois law. For this reason, the Court considers the information presented by Grinnell.

Grinnell argues that this information shows that the advertising and personal injuries alleged in the complaint are barred under the prior publication exclusion in the Policy. The prior publication exclusion bars coverage when the "the wrongful behavior had begun prior to the effective date of the insurance policy." *Taco Bell*, 388 F.3d at 1072. The Policy states that the insurance "does not apply to . . . "[p]ersonal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning

of the policy period." (Policy at 15.) The prior publication exclusion, however, "cannot save the insurer when the republication contains new matter that the plaintiff in the liability suit against the insured alleges as fresh wrongs." *Id.* at 1073.

In *Taco Bell*, the famous fast food chain was sued for stealing the advertising idea of a "clever, feisty Chihuahua dog with an attitude." 388 F.3d at 1072. The insurance company appealed, claiming that, because the first "Chihuahua" ads began before the policy coverage, it had been previously published and thus subject to the prior publication exclusion. *Id.* The Seventh Circuit found that the underlying complaint alleged novel torts after the start of the insurance policy, including the misappropriation of "the Chihuahua's poking its head through a hole at the end of the commercial." *Id.* at 1073. Although this was a "modest" claim of advertising injury as compared to the entire lawsuit, it was included, and "Taco Bell bought insurance against having to pay the entire expense of defending against such claims." *Id.*

In response to the advertising injuries alleged in the state complaint, Grinnell provides evidence that SBC started its business and published its designs, in exact replica, prior to the start of the Policy's coverage. As a result, the alleged trade dress injuries are not covered under the Policy.

In contrast, Grinnell's prior publication of defamation does not cover the entirety of alleged defamatory conduct in the state complaint. Grinnell provides an email chain where Shawn Flood relates that he told a third party that Flood Bros. was going to be sold. (1/19/2018 Email.) This is only one of several defamatory statements alleged in the complaint. For example, as described above, the state complaint alleges Shawn Flood stated that Flood Bros. stole a customer's trash compactor. (State Answer ¶ 176.) The state complaint also alleges that Christopher Flood stated that the incipient sale of Flood Bros. would be a large corporate takeover which would increase customer rates. (*Id.* ¶¶ 169–70.) As explained in *Taco Bell*, the difference between the variety of defamatory statements alleged may be "modest," but they were included in the state complaint, and SBC purchased insurance in order to receive coverage from allegations such as these. 388 F.3d at 1073. The alleged defamatory statements made by Shawn and Christopher Flood constitute injuries within the plain meaning of the Policy.

Grinnell additionally argues that the advertisement injuries are barred by the "known loss doctrine." As the advertising injuries have already been removed from coverage by the prior publication exclusion, the Court does not analyze this argument.

As previously stated, Grinnell has a duty to defend the entire action if the underlying state complaint "contains allegations that potentially fall within the scope of coverage." *Momence Meadows*, 566 F.3d at 694 (citation omitted). Because the Defendants' alleged defamatory conduct falls within the plain meaning of the Policy, Grinnell's motion for partial summary judgment is denied.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, Defendants' Motion to Strike (Dkt. No. 88) is denied, and Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 54) is denied.

**IT IS SO ORDERED.**

_____
      Harry D. Leinenweber, Judge
      United States District Court

Dated: 11/25/2020